## HELD AT HARTFORD, FOR THE COUNTIES OF HARTFORD, WINDHAM, LITCHFIELD, MIDDLESEX AND TOLLAND,

### ON THE FIRST TUESDAY OF MAY, 1884. ·

### Present,

PARK, C. J., CARPENTER, PARDEE, LOOMIS AND GRANGER, Js.

---

## HENRY C. PRATT vs. HENRY BREWSTER AND OTHERS.

It is the duty of an attorney at law, who has collected money for a client, · to pay it over to him on demand, and it is very generally held that he is bound, on receiving the money, to notify his client of the fact, and that if he does not he is liable in tort for such negligence.

Where an attorney has converted such money to his own use he is liable for the wrongful act in an action framed in tort, and it makes no dif-. ference that an action on the implied contract could have been maintained, nor that he had made an express contract to pay over the money.·

Where a complaint under the Practice Act charged that the defendant, and a firm of which · he was a member, acting as attorneys, collected certain sums for the plaintiffs, which were fraudulently appropriated by the defendant and never paid or accounted for to the plaintiffs, although a reasonable time had elapsed, it was held that the complaint stated every essential fact to charge the defendant in tort.

And held not necessary that the defendant's partner should have been joined as a defendant.

[Argued May 6th—decided May 6th, 1884.]

WRIT OF ERROR to reverse a judgment of the Superior Court in Hartford County, (*Andrews, J.,*) in a civil suit against the plaintiff in error for moneys collected as an attorney and converted to his own use.

Upon the original complaint, which charged a fraudulent appropriation of the money, the body of the defendant therein was attached, and at the first term of the court special bail was given by the defendant. The defendant demurred to the complaint, and at a later term the plaintiffs amended their complaint by filing the following substituted complaint:—

1. That on or before March 6th, 1871, one Charles P. May of Montgomery, Alabama, was indebted to the plaintiffs by his note for the sum of $1,781.50, due September 9th, 1870.

2. That on or before said March 6th, the defendant was an attorney at law, and as such attorney was then engaged in the practice of law in the city of New York, and, with one Cornelius J. Rooney as his partner there, had an office at 200 Broadway, in said city, where he and said Rooney. under the name of Pratt & Rooney, professed to keep a law and collection office.

3. That on or about said March 6th, the plaintiffs placed said note in the hands of said Pratt and said Pratt & Rooney for collection, and then employed him and them as their agents and attorneys in a professional and fiduciary capacity to collect the same for them; and said defendant and his said firm then received the same for that purpose, and agreed to account to the plaintiffs for all moneys collected thereon within a reasonable time after the same were received.

4. That in March, 1871, said Pratt & Rooney sent said note for collection to the firm of Watts & Troy, attorneys at law at said Montgomery, and said Watts & Troy, prior to January 4th, 1873, collected on account thereof the sum of $662, and on said January 4th, sent $617.86 of the same, being the $662 collected, less $44.14, the amount of their fees for making such collection, to said Pratt & Rooney, who duly received the same on or about the 8th day of January, 1873.

5. That on or about January 27th, 1873, said Watts & Troy made a further collection of $350.99 on said claim,

and on or about January 31st, 1873, sent $327.59 of the same, being the $350.99 collected, less their fees of $23.40 for making the same, to said Pratt & Rooney, who duly received the same on or about February 5th, 1873.

6. That the firm of Watts & Troy was dissolved in the year 1873, and Daniel S. Troy, one of said firm, thereafter took charge of the plaintiffs' said claim at Montgomery.

7. That the firm of Pratt & Rooney was dissolved on or about December 31st, 1873, and said Pratt thereafter had exclusive charge and control of their business, and of the matter placed in their hands as aforesaid by the plaintiffs.

8. That said Troy, prior to November 27th, 1875, collected other and further sums, viz.: $140.39 and $78 on the plaintiffs' said claim, and on said November 27th, sent $203.33 of the same, being the $218.39 collected, less fees of $14.54 for collecting said sums, and fifty cents paid for exchange, to said Henry C. Pratt, and said Pratt duly received the same.

9. That each and all said sums of money paid as aforesaid to said Pratt, and said Pratt & Rooney, viz., $617.86, $327.59, and $203.39, were received by the defendant and his said firm, acting as the attorney and agent of the plaintiffs as aforesaid, and were fraudulently appropriated by the defendant, and never paid or accounted for to the plaintiffs, although a reasonable time for doing so has long since elapsed. The plaintiffs claim $2,000 damages.

The defendant demurred to this complaint because the contract alleged was that of the defendant and Rooney, and the latter had not been made a co-defendant. This demurrer was overruled by the court.

Afterwards, at the same term, the defendant filed the following motion:—

The defendant, and Sarah S. Cowen, his surety on a recognizance of special bail in said action, move that said recognizance be discharged, and that they be released from liability thereon, for the following reasons:

1. Because upon the allegations of the substituted complaint the body of the defendant is exempt from execution.

2. Because the substituted complaint is substantially different from the complaint under which said recognizance was entered into.

This motion was denied by the court. Upon the hearing, upon a general denial and a second defense that the money had been accounted for to the plaintiffs, the issue being closed to the court, the court found the following facts:

The defendant is an attorney-at-law, admitted in 1861, and has been engaged in the practice ever since. In 1865 he formed a partnership with one Cornelius 'J. Rooney for the purpose of carrying on the law and collection business in the city of New York. The business was carried on at No. 200 Broadway. Rooney was not an attorney. The defendant was the senior member of the firm, and had the general direction of its business, but in the division of the labor of their office as between themselves he took special charge of matters in the courts of the city and state of New York, while Rooney attended especially to collections. On the 6th day of March, 1871, the firm received from the plaintiffs for collection a note held by the plaintiffs against Charles P. May of Montgomery, Alabama, for the sum of $1,781.50, due September 9th, 1870, with directions to "collect the same by suit or otherwise, as might be necessary." Pratt & Rooney sent this note to their correspondents in Alabama, the law firm of Watts & Troy of Montgomery, by whom it was placed in suit and a judgment obtained thereon. Some delay occurred in collecting this judgment, but on the 8th day of January, 1873, Pratt & Rooney received from their correspondents on account thereof the sum of $617.86, and on the 5th day of February, 1873, the further sum of $327.39. The fees of the correspondents were deducted before remitting.

The firm of Pratt & Rooney was dissolved on the 31st day of December, 1873, the defendant buying out Rooney's interest, taking the entire business himself and continuing it alone.

On the 27th of November, 1875, the defendant received from Alabama, on account of the May judgment, the fur-

ther amount of $203.33. The plaintiffs, both before and after the 27th of November, 1875, made demand on the defendant for an accounting and for the payment of said sums of money to them.

The sums of money mentioned above as having been received by the firm of Pratt & Rooney, on the 8th day of January, and on the 5th day of February, 1873, were converted by the firm to its own use with the knowledge and participation of the defendant. The sum received by the defendant on the 27th of November, 1875, was by him converted to his own use. Nothing has ever been paid to the plaintiffs.

All the allegations of the plaintiffs' substituted complaint, not inconsistent with this finding, are true. The defendant's second defense is not true.

Upon the foregoing facts, the defendant made the following claims:

1. The essential distinctions between the old common law actions are not abolished by the Practice Act. It is still necessary to determine to what class a given action belongs, and then to apply to it the rules of evidence and the essential rules of pleading which govern that class.

2. If this action is in contract, there can be no judgment against the defendant, his partner not having been joined, and that objection having been duly raised by demurrer.

3. If this action is in contract, to recover moneys collected by collecting agents, there can be no judgment against the defendant, inasmuch as the plaintiffs have failed to prove any demand for the moneys so collected. It is necessary to prove such demand, especially in view of the defendant's letter of November 26th, 1875, notifying the plaintiffs that certain moneys had been collected.

4. If this action is in contract the plaintiffs must, in order to recover, make out such a cause of action as will hold the defendant's body. This they have failed to do, both in allegation and in proof. There is no proper allegation and no proof of a "professional employment or of misconduct or neglect" therein, or that the defendant or

his partner was a "person acting in a fiduciary capacity." Furthermore, even if the fiduciary capacity were properly alleged and proved, there could be no recovery in this action against the defendant for moneys actually received by his partner.

5. If this action is not in contract it must fail as an action in tort for want of proper allegations. There is no attempt to set forth negligence, and the bare allegation in paragraph nine of the complaint that certain moneys "were fraudulently appropriated by the defendant" can not be regarded as sufficiently charging either fraud or conversion.

6. If this action is in tort there can be no judgment against the defendant for his own personal tort for want of proof.

7. If this action is in tort, there ean be no judgment against the defendant for his partner's tort, even if such tort were proved; 1st, because if such tort were committed, it was without the knowledge and consent of the defendant; 2nd, because the only attempt to allege tort is in terms limited to the defendant and is not supported by proof of the partner's tort.

The court overruled these claims and rendered judgment for the plaintiffs.

*W. W. Perry*, for the plaintiff in error.

*E. S. White*, for the defendants in error.

STODDARD, J.* The plaintiff in error, Pratt, and one Rooney were partners. An action was brought and judgment obtained against Pratt alone. In this writ of error he insists that the judgment against him is erroneous for the reason, as he alleges, that the cause of action is in substance and in form *ex contractu*, and, if in form in tort, yet that it is founded on contract, and that therefore his partner Rooney should have been joined as a co-defendant.

---

* JUDGE STODDARD of the Superior Court sat in the place of Judge CARPENTER, who was disqualified by relationship to one of the parties.

The case finds that Pratt and Rooney were partners in a law and collection business in the city of New York, that Pratt was and Rooney was not an attorney-at-law, and that the former had the general direction of the business of the firm and took special charge of matters in court, while Rooney looked after the collections. On March 6th, 1871, the firm received from Brewster & Co., the defendants in error, for collection, a note for the sum of $1,781.50, due September 9th, 1870, held by them against Charles P. May, of Montgomery, Alabama, with directions "to collect the same by suit or otherwise as might be necessary." On January 8th, 1873, Pratt & Rooney received, through their correspondents, on account of this claim, the sum of $617.86, and on February 5th, 1873, the further sum of $327.39. The firm of Pratt & Rooney was dissolved December 31st, 1873, and on November 27th, 1875, Pratt received on the same account the further sum of $203.33. Both before and after the last date Brewster & Co. made demand on Pratt for an accounting, and for the payment of the moneys received. The sums of money received January 8th and February 5th, 1873, were converted by Pratt & Rooney to their own use, with the knowledge and participation of Pratt, and the sum received by him November 27th, 1875, was also by him converted to his own use. Nothing has ever been paid to Brewster & Co.

Upon principle and authority it is clear that an agent converting the property of his principal to his own use is liable to respond for such wrongful act in an action framed in tort. It makes no difference in this particular that an action on the implied contract could be also maintained.

Trover, before the existence of our recent Practice Act, was an appropriate remedy. Attorneys as well as other agents are subject to this rule, and if any distinction is to be made it certainly is not in the direction of exempting from a liability attaching to other agents, an agent who occupies the relation of peculiar trust and confidence reposed in an attorney.

The money received by Pratt & Rooney and by Pratt

was the property of Brewster & Co. It was the clear and undisputed duty of Pratt to pay it over to them upon demand, and it is very generally held that as an attorney he was bound, within a reasonable time after its receipt, to notify his clients of that fact, and failing in this duty he is liable in tort for such negligence. The rule as to the liability of attorneys is stated, with a full citation of authorities in *Cotton* v. *Sharpstein*, 14 Wis., 226. See also Weeks on Attorneys-at-law, p. 514, § 308.

The complaint contains a statement of the material facts found by the court, and in one of the paragraphs it is charged that said sums were received by Pratt and by Pratt & Rooney, " acting as the attorney and agent of Brewster & Co.," and were "fraudulently appropriated by Pratt, and never paid or accounted for, although a reasonable time for doing so has long since elapsed."

Here is a direct and definite statement that the money was appropriated by Pratt to his own use against the will of Brewster & Co., and the complaint contains a statement of every essential fact to charge him in tort.

Reliance is placed by the plaintiff in error upon the fact that in one of the paragraphs of the complaint it is alleged that he and his firm "agreed to account to the plaintiffs for all moneys collected, &c." From this he argues that a contract is alleged in the complaint, and so the form of action is *ex contractu*. This conclusion does not follow; the language used is a mere statement of what the law implies from the other facts stated in the complaint; that is, the obligation of the defendant in the suit to turn the money collected over to the plaintiffs; so that, when it is further alleged that notwithstanding that obligation the defendant appropriated the money to his own use, he did a tortious act, whereby a right of action in tort sprang into existence.

Necessarily, when an agent is properly charged with converting to his own use property of his principal, the facts show an obligation or contract on his part to return the property to its owner. The obligation is in one sense an element of the cause of action, but it does not constitute

the cause of action.   The cause of action arises because of a wrongful act of the agent in reference to the property. It is of no consequence that this property is also the subject of a contract between the parties.

Even if this action had been in form *ex contractu*, and not in tort, this writ of error, for other reasons could not succeed.   The case is free from difficulty and does not demand further discussion.

There is no error in the judgment.

In this opinion the other judges concurred.